## Patterson v. Municipal Authority of Westmoreland County

Before Sweet, P. J., Gladden and Hanna, JJ.

*Frank C. Carroll*, for plaintiffs.
*Thomas R. Ceraso*, for defendant.

HANNA, J., May 31, 1974.—On March 28, 1967, plaintiffs purchased property assessed to the Westette Pipe Company from the Washington County Tax Claim Bureau, the deed there being dated April 6, 1967, and recorded in the Recorder's Office of Washington County, Pa., in Deed Book 1257, page 336. On December 2, 1968, plaintiffs filed an action to quiet title, which resulted in an opinion and order dated September 16, 1970, in favor of plaintiffs. On May 25, 1970, defendant, Municipal Authority of Westmoreland

County, recorded a deed from the Westette Pipe Company dated April 28, 1966.

Defendant had been in possession of the premises from some time prior to March 28, 1967, to the present day without interruption.

On November 20, 1970, plaintiffs filed at November term, 1970, no. 241, A.D., a complaint in ejectment against defendant, Municipal Authority of Westmoreland County. Defendant notified plaintiffs by letter dated January 4, 1971, that defendant intended to proceed with condemnation proceedings no later than January 25, 1971. Plaintiffs responded on January 5, 1971, asserting a claim for "mesne profits" in accordance with the Act of May 2, 1876, P. L. 95, 12 PS §1557.

Defendant commenced condemnation proceedings at January term, 1971, no. 185, A.D., and obtained title to the premises which was the subject of the ejectment action. There was an award and this action is now on appeal with the Commonwealth Court.

On February 25, 1974, plaintiffs filed a motion requesting the court to set a date for hearing in regard to the "mesne profits." The hearing was set by Judge Richard DiSalle for March 14, 1974. On March 7, 1974, defendant filed a motion to quash the action in ejectment.

The question which arises by this motion to quash is whether or not plaintiff has a right to "mesne profits" from the date of purchase from the Washington County Tax Claim Bureau of April 6, 1967, to January 28, 1971. Does the action of defendant, by using its eminent domain powers, make the action in ejectment a nullity?

It is our opinion that under the peculiar facts of this case the action in ejectment is not a nullity. In the condemnation proceedings at January term, 1971, no. 185, A.D., the parties filed a stipulation dated

July 27, 1973, in which it was agreed that the date of the taking was January 26, 1971, and that detention damages, if any, would begin as of that date. As a matter of fact, the Board of View award included interest from January 26, 1971. Had the parties agreed that the date of taking was April 6, 1967, as would have been proper under the facts of this case, there would be no doubt that the action of ejectment would have become a nullity and that the claim for "mesne profits" would be dismissed.

Unfortunately for defendant, counsel for defendant, by the stipulation, allowed plaintiffs to preserve a claim for "mesne profits" from March 25, 1967, to January 26, 1971.

The court must assume that defendant knowingly set the date of the taking as of January 26, 1971, although it knew after it notified plaintiffs of its intention to proceed by condemnation that plaintiffs were making a claim for "mesne profits" under its trespass action from the date of the purchase of the property from the Tax Claim Bureau.

Pennsylvania law is clear that the eminent domain proceedings does not eliminate a claim for damages under a trespass action for a trespass occurring prior to the date of the actual taking.

One of the earliest cases to discuss this question was Shevalier v. Postal Telegraph Company, 22 Pa. Superior Ct. 506 (1903), in which a telegraph company had entered upon the land without payment of damages to the owner or without securing the same, erected its poles on the land, and after the expiration of several years, filed a petition for appointment of viewers. Damages for the taking were assessed as of the date of the filing of the petition, the court stating that for the trespass up to the time of the filing of the petition, the owner has his remedy at law. This case is

quoted with approval in Cochran Coal Company v. Municipal Management Company, 380 Pa. 397 (1955). In the Cochran case, plaintiff company sought by action in trespass to recover damages for occupation by defendant of certain of its coal rights, and the question arose whether the injury to plaintiff's property would be redressed in an action in trespass or in a viewer's proceeding. Although defendant here denied an actual taking, it contended that since the authority had a statutory right of eminent domain, plaintiff's sole remedy for said injuries is by way of board of view. The court denied this, citing with approval the following quote from the Shevalier case, " 'For the trespass up to the time of filing the petition, the owner has his remedy at law. For the injury caused by the imposition of the permanent servitude, he has his remedy in the proceedings before the viewers.' "

The court, page 405, further states "where private property is taken, injured or destroyed by the non-tortious conduct of one invested with the power of eminent domain, the owner's only avenue of redress is by way of a board of view; but, where there is tortious conduct, as is here alleged, the owner may proceed at law for damages accruing until the trespasser exercises its power of eminent domain." See also, 33 A. L. R. 3d, beginning at page 1132, a discussion on the question of actions for damages for prior trespasses upon condemned property.

Defendant makes a claim in its brief that there was an inverse or defacto condemnation by virtue of its remaining in possession from April 6, 1967. The difficulty with this argument is that defendant contravened this claim by its own stipulation as to the date of actual taking.

Assuming the date of actual taking to be April 26, 1971, in accordance with the stipulation, the law, as

propounded in the Shevalier case and in the Cochran case, compels the court to the determination that the claim for "mesne profits" in the trespass action is a remedy still available to plaintiff for the period between April 6, 1967, and January 26, 1971.

## ORDER

And now, this May 31, 1974, defendant's motion to quash is hereby dismissed.